```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION

JAMES O. MORRIS,

              Plaintiff,
     vs.                              Civil Action 2:12-CV-595
                                      Judge Sargus
                                      Magistrate Judge King
Carolyn Colvin, Commissioner
of Social Security,

              Defendant.
```

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383(c), for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income benefits. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 14, the Commissioner's *Memorandum in Opposition*, Doc. No. 19, and plaintiff's *Reply*, Doc. No. 20.

Plaintiff James O. Morris filed his initial applications for benefits on June 22, 2005, as a result of delayed learning. The applications were denied, *PageID* 100-13, 210, and plaintiff did not appeal that decision.

Plaintiff filed his current applications for benefits on May 29, 2008, alleging that he has been disabled since May 3, 2008, again by reason of low cognitive functioning. *PageID* 191-93, 194-200, 214. The applications were denied initially and upon reconsideration, and

plaintiff requested a *de novo* hearing before an administrative law judge.

A hearing was held on January 11, 2011, at which plaintiff, represented by counsel, appeared and testified. Steven S. Rosenthal, a vocational expert, appeared but was not called to testify. *PageID* 96. In a decision dated February 16, 2011, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *PageID* 67-74. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 14, 2012. *PageID* 46-50.

Plaintiff was 32 years old on his alleged disability onset date. *PageID* 209. He has a high school education in classes for the developmentally handicapped. *PageID* 83-84, 219.  He has past relevant work experience as a golf course laborer, a packer, and a box assembler. *PageID* 215.

Plaintiff lives in a camper next to his mother's and step-father's house. *PageID* 91.  He does not bathe or change clothes regularly. *PageID* 92. He can prepare some simple meals; his mother sometimes reads preparation directions to him.  *PageID* 88. He is unable to manage money or make change. *PageID* 88.

Plaintiff testified at the administrative hearing that he was bullied in school, *PageID 85*, and grew "more angry at people." *PageID* 85-86. That anger has never gone away. *PageID* 86. Raised voices trigger severe anxiety and suicidal thoughts.  *PageID* 91.

Plaintiff takes medication for bipolar disorder, but the medication causes negative emotional responses. *PageID* 88-90. Plaintiff's mother helps him remember and attend his medical appointments. *PageID* 87.

Plaintiff has held various jobs since high school but quit, or was fired, from most positions because he became upset with others or was unable to meet the mental demands of the job. *PageID* 88, 93, 95.

Plaintiff began treatment at Scioto Paint Valley Mental Health Center ("Scioto") in December 2005. *PageID* 346. At a March 19, 2008 diagnostic assessment, conducted at the request of plaintiff's attorney, *PageID* 359-64, plaintiff complained of an "abusive childhood, difficulty keeping up on jobs and losing them frequently, having no tolerance for yelling and screaming and at times threatening to kill himself if folks don't shut up." *PageID* 359. Plaintiff was diagnosed with post-traumatic stress disorder and borderline intellectual functioning; he was assigned a GAF score of 53.[1] *PageID* 364. He was referred to a psychiatric evaluation and case management services. *PageID* 363.

---

[1] "GAF," or Global Assessment of Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003). See Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. Individuals with scores of 51-60 are classified as having "moderate symptoms ... or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers)." DSM-IV-TR at 34.

Pam Sayre-Butt, LISW, has provided counseling to plaintiff, *PageID* 359-66, 371-407, 451-63, 489-90, 492, 521-27, 570-77, and J. Mark Hamill, M.D., provides medication management, *PageID* 367-69, 464-65, 550-58, 571, 573. Treatment notes reflect plaintiff's reports of anxiety and irritability when yelled at or when others speak in loud voices; he does not like strangers approaching him.

In January 2008, Earl Stump, Ph.D., a psychologist at Scioto, examined plaintiff upon the referral of Ms. Sayre-Butt and diagnosed borderline intellectual functioning. *PageID* 351. According to Dr. Stump, plaintiff's low cognitive functioning "probably" accounts for plaintiff's educational deficiency and poses "significant barriers to stable employment." *Id*. Plaintiff's condition has been complicated by a "probable Schizotypal Personality Disorder marked by odd beliefs and thinking, unusual perceptual experiences, suspiciousness, eccentric dress, and an inability to maintain close relationships." *Id*. Dr. Stump concluded that plaintiff's employment "would be limited to well supervised, laboring jobs with little public contact and few demands on educational skills." *PageID* 352. The following month, Dr. Stump clarified his opinion: by "well supervised," Dr. Stump meant that plaintiff should be closely supervised because, in all likelihood, he will make mistakes. Moreover, plaintiff's supervisor should be sensitive to plaintiff's special needs. The environment contemplated by Dr. Stump would be similar to a "sheltered workshop." Plaintiff could not work with the

public or with the supervision typical in a "mainstream" job. *PageID* 353.

On July 28, 2008, Steven J. Meyer, Ph. D., reviewed plaintiff's mental health treatment records for the state agency and concluded that plaintiff had mild limitations in his activities of daily living, and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. *PageID* 422. Dr. concluded that plaintiff has the following mental residual functional capacity:

> Although he does have some difficulty getting along with people, he specifies that this problem occurs when people are being mean or yelling. He does have friends that he spends time with and is able to get along when motivated to do so. Further, [plaintiff] reported on the ADL form that he sees people when lying in bed but he denied current symptoms of psychosis, delusions, and hallucinations to his TS [treating source]. His statements are partially credible. There is no TS opinion regarding the [plaintiff]'s ability to work, therefore weight cannot be assigned. However, great consideration is given to the report supplied by the [plaintiff]'s TS. The [plaintiff] appears to have the mental capacity for simple and some moderately complex routine tasks, oral and hands on instruction, intermittent/occasional interactions with others, and some assistance as needed at times of change in routine[.]

*PageID* 410-11. On February 5, 2009, state agency psychologist Bruce Goldsmith, Ph.D., affirmed Dr. Meyers' opinion. *PageID* 471.

On December 9, 2008, Dr. Hamill completed a mental status questionnaire in which he noted that plaintiff acts more like a teen than a 32 year old. Plaintiff's mood and affect alternated between euphoric and irritable. He was socially anxious but pleasant and

cooperative; he spoke in a pressured manner and was sometimes tangential in his conversation. *PageID* 448. Plaintiff's IQ score fell in the borderline range; he had very limited insight and poor judgment. *Id.* According to Dr. Hamill, plaintiff's ability to remember, understand and follow directions was poor; he could follow only very simple and concrete instructions; his ability to maintain attention was poor; he could perform only very simple tasks. Plaintiff would react "extremely poorly" to pressures in a work setting, even to pressure in the form of a request to speed his work pace. *PageID* 449.

On June 1, 2010, Dr. Hamill characterized plaintiff as markedly limited in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerances, to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Plaintiff was moderately limited in his abilities to carry out very short and simple instructions, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to make simple work-related decisions, to interact appropriately with the general public, to ask simple questions or request assistance, to accept instructions and respond appropriately

6

to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. According to Dr. Hamill, plaintiff's condition would likely deteriorate if he were placed under the stress of a job. *PageID* 502-06.

In November 2010, Dr. Stump reported that plaintiff's performance on the Daily Living Skills Domain of the Vineland Adaptive Behavior Scales indicated that plaintiff's mental age was eleven years old. *PageID* 547-48.

On March 17, 2011, *i.e.*, after the administrative law judge's decision, Dr. Hamill stated that he agreed with Dr. Stump's assessment of plaintiff's mental age and opined that plaintiff could not be competitive in the workplace. *PageID* 578.

In his decision, the administrative law judge found that plaintiff's severe impairments consist of borderline intellectual functioning, an affective disorder, and low back strain. *PageID* 69. The administrative law judge went on to find that plaintiff's impairments neither meet nor equal a listed impairment, including Listing 12.04.  *PageID* 69.  In assessing plaintiff's mental impairments, the administrative law judge found that plaintiff has, *inter alia*, moderate difficulty in social functioning.  *PageID* 70. The administrative law judge next found that plaintiff has the residual functional capacity to perform a limited range of medium

work. In this regard, although the administrative law judge noted that the record since the prior administrative decision contained new and material evidence, "the evidence does not establish that the claimant's condition has significantly changed since that time." *PageID* 72. The administrative law judge therefore "adopted" the findings of the prior administrative decision regarding plaintiff's functional capacity. *Id*. Relying on the vocational evidence adduced at the prior administrative hearing, *PageID* 74, the administrative law judge found that plaintiff's residual functional capacity does not preclude the performance of his past relevant work as a golf course laborer, packer, and box assembler. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *PageID* 74.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*,

nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In his *Statement of Errors*, plaintiff contends that the administrative law judge's determination that plaintiff's mental impairments do not meet Listing 12.04 lacks substantial support in the evidence because plaintiff's functional limitations are greater than those found by the administrative law judge, that the administrative law judge erred in discounting Dr. Hamill's opinions, and that the administrative law judge erred in adopting the residual functional capacity assessment and vocational determination made in the prior administrative hearing in light of new and material evidence and greater limitation of function. *Statement of Errors*, *PageID* 595. This Court agrees that the action should be remanded for further consideration.

The administrative law judge found that plaintiff's bipolar disorder neither meets nor equals a listed impairment. Listing

12.04, which addresses affective disorders, requires that a claimant satisfy the "A criteria" of the listing and either the "B criteria" or the "C criteria" of the listing. The "A criteria" are satisfied by medical documentation of bipolar syndrome with a history of episodic periods; evidence of persistent disturbances of mood or affect is sufficient to satisfy the "A criteria." *Rabbers v. Commissioner, Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009).

The "B criteria" are satisfied by a showing of at least two of the following functional limitations: (1) a marked restriction of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace, or (4) repeated episodes of decompensation, each of extended duration.

If the "B criteria" are not met, the listing may nevertheless be satisfied if the "C criteria" are met, *i.e.*, with evidence of a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms or signs currently attenuated by medical or psychosocial support and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate; or (3) a current history of one or more

years' inability to function outside a supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. pt. 404, Subpt. P, App.1, § 12.04.

In considering whether plaintiff's affective disorder meets or equals the "B criteria" of Listing 12.04, the administrative law judge's findings were identical to those of the state agency psychologists, although he did not expressly adopt Dr. Meyer's opinions in making those findings. *See PageID* 70-71.[1] In considering whether plaintiff's mental impairments satisfy the "C criteria" of Listing 12.04, the administrative law judge cited to no opinion evidence – or indeed to any evidence in the record - but merely tracked the language of the listing:

> There is no medical documentation of repeated episodes of decompensation, a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate, or a current history of an inability to function outside of a highly supported living arrangement.

*PageID* 71. There is certainly evidence in the record to suggest that plaintiff's mental impairments may satisfy the "C criteria" of Listing 12.04: plaintiff has been diagnosed and treated for bipolar disorder for more than two (2) years and his relationship with and dependence on his mother may reflect an inability to function outside of a highly supported living arrangement. However, the administrative law judge failed to evaluate that evidence in

---

[1] In considering plaintiff's residual functional capacity, however, the administrative law judge accorded "great weight" to the state agency opinions.

connection with his consideration of Listing 12.04. Under these circumstances, the Court simply cannot determine whether the administrative law judge's evaluation in this regard enjoys substantial support in the record.

The Court also concludes that the Commissioner erred in adopting the residual functional capacity assessment and vocational determination made in the prior administrative proceeding in light of the greater limitation of mental function found by the administrative law judge in the later proceeding. In the earlier proceeding, plaintiff was found to have mild limitation in social functioning, *PageID* 106; in the current proceedings, plaintiff was found to have moderate limitation in social functioning, *PageID* 70. Yet, the administrative law judge expressly found that "the limitations in the prior ALJ decision have not increased." *PageID* 73. He therefore adopted the residual functional capacity and vocational evidence of the prior proceeding. *PageID* 72, 74. Because the reasoning of the administrative law judge in this regard is internally inconsistent, the Court cannot conclude that the Commissioner's decision enjoys substantial support in the record.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that the action be remanded for further proceedings.[2]

---

*PageID* 73.
[2] In light of this recommendation, the Court need not and does not address plaintiff's remaining contention.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: July 10, 2013          *s/Norah McCann King*
                             Norah McCann King
                             United States Magistrate Judge